**CASE NO. 19-21538-CIV-ALTONAGA/Goodman**

**MELANIE E. DAMIAN**,

      Plaintiff,

v.

**YELLOW BRICK CAPITAL
ADVISERS (UK) LIMITED**; *et al.*,

      Defendants.

_____/

## <u>ORDER</u>

**THIS CAUSE** came before the Court on Defendants, Yellow Brick Capital Advisers (UK) Limited ("Yellow Brick UK") and Yellow Brick Innovations (US) LLC's[1] ("Yellow Brick US['s]") Motion to Dismiss First Amended Complaint [ECF No. 35] for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) as to Yellow Brick US, and for lack of personal jurisdiction over Yellow Brick UK under Rule 12(b)(2). Plaintiff, Melanie Damian, filed a Response [ECF No. 37]; to which Defendants filed a Reply [ECF No. 38]. The Court has carefully considered the First Amended Complaint ("Am. Compl.") [ECF No. 25], the parties' written submissions, and applicable law. For the following reasons, the Motion is denied.

## I.      BACKGROUND

This is an action to recover allegedly fraudulent transfers from Onix Capital LLC, an insolvent company, to Defendant Yellow Brick UK. (*See* Am. Compl. 1–2). Plaintiff is the

---

[1] Yellow Brick Innovations (US) LLC was formerly known as Yellow Brick Capital Advisors (US) LLC.

Receiver for Onix Capital.[2]  (*See id.* ¶ 11).  Defendant Yellow Brick UK is a United Kingdom private limited company advertising itself as an investment and financial advisory firm.  (*See id.* ¶¶ 12, 21).  Defendant Yellow Brick US is a Delaware limited liability company with its principal place of business in Florida.  (*See id.* ¶ 13).

Plaintiff alleges Yellow Brick US was incorporated by and is financially, logistically, and pragmatically controlled by Yellow Brick UK.  (*See id.* ¶¶ 13, 28).  On July 25, 2019, Plaintiff filed the Amended Complaint, bringing three separate claims of fraudulent transfer and one claim of unjust enrichment against Yellow Brick UK and Yellow Brick US, as Yellow Brick UK's alter ego.  (*See generally id.*).

### A.    The Receivership

In November 2016, the Securities and Exchange Commission ("SEC") commenced an action against Onix Capital and the Relief Defendants as entities run for the purpose of furthering a securities fraud scheme perpetrated by Alberto Chang-Rajii ("Chang").  (*See id.* ¶ 1).  The case — *SEC v. Onix Capital LLC*, Case No. 16-CV-24678 (S.D. Fla. filed Nov. 8. 2016) (the "Receivership Proceeding") — is pending.  (*See id.*).  On April 4, 2017, the court in the Receivership Proceeding entered an order (the "Receivership Order")[3] appointing Plaintiff as Receiver.  (*See id.* ¶ 2).  Under the Receivership Order, Plaintiff has the duty to investigate the assets belonging to Onix Capital and the Relief Defendants and prosecute causes of action to recover assets, including bringing fraudulent transfer actions.  (*See id.* ¶¶ 2–4 (citing Receivership Order)).

---

[2] Plaintiff is also the Receiver for Ocean LLC, Next Cab Ventures LLC, Next Call Ventures LLC, Next Chat Ventures LLC, Next Pay Ventures LLC, Next Track Ventures LLC, Next U Ventures LLC, and Progressive Power LLC (collectively the "Relief Defendants," and with Onix Capital, the "Receivership Entities").  (Am. Compl. 1).

[3] *SEC v. Onix Capital LLC*, Case No. 16-CV-24678, Receivership Order [ECF No. 84].

Plaintiff determined Onix Capital paid Defendant Yellow Brick UK an amount in excess of $164,833.00 while Onix Capital was insolvent, in furtherance of Onix Capital's fraudulent scheme. (*See id.* ¶ 5). Plaintiff filed this action to recover the fraudulent transfers. (*See id.* ¶ 7).

## B. The Yellow Brick Group

Yellow Brick UK and Yellow Brick US comprise the Yellow Brick Group.[4] (*See id.* 1). Plaintiff alleges Andres Hammer is the CEO of the Yellow Brick Group and Jonathan Kol-Bar is Yellow Brick Group's Group Executive Chairman.[5] (*See id.* ¶¶ 12–13). According to Plaintiff, since opening its office in the United States, "Yellow Brick US has agreed to act on Yellow Brick UK's behalf, and has been financially, logistically and pragmatically controlled by Yellow Brick UK and the Yellow Brick Group." (*Id.* ¶ 13). Plaintiff's allegations regarding Yellow Brick UK, the formation of Yellow Brick US, and the relationship between the two entities are as follows:

*Yellow Brick UK.* Since 2010, Yellow Brick UK, a United Kingdom private liability company, has been controlled by Joko Holdings LLC, a Florida-based company registered in New York with a principal office at 20890 North East 32nd Avenue, Aventura, Florida 33180.[6] (*See*

---

[4] The Amended Complaint defines Yellow Brick US and Yellow Brick UK collectively as the "Yellow Brick Group." (*Id.* 1). It is unclear whether there are additional Yellow Brick entities within the Group.

[5] Defendants contest this fact. (*See* Declaration of Jonathan Kol-Bar ("Kol-Bar Decl.") [ECF No. 35-2]). Kol-Bar states, "I use the name 'Yellow Brick Group' on my email signature block as a branding strategy. On my email signature block, I represented I was the 'Group Executive Chairman' of the 'Yellow Brick Group' to brand and promote the various unrelated 'Yellow Brick' entities. I do not hold and have never held a 'Group Executive Chairman' position because the Yellow Brick Group is a non-existent entity." (*Id.* ¶ 46).

[6] Defendants disagree, stating "Joko Holdings, LLC has never done business in Florida . . . and the Aventura Florida address cited by the Receiver in the Amended Complaint is for 'Joko, LLC' a completely unrelated Florida limited liability company." (Mot. 17–18 (alteration added)). In support of their contention, Defendants submit a filing receipt for Joko Holdings, LLC's Articles of Incorporation from the State of New York. (*See* Articles of Incorporation [ECF No. 35-4]). For her part, Plaintiff submits a Notice of Relevant Legal Entity (RLE) Person with Significant Control (PSC) ("PSC Form") [ECF No. 25-1], showing a corporation named "Joko Holdings LLC" with a "Registered or Principal Office" at 20890 North East 32nd Avenue, Aventura Florida 33180-3654. (*Id.* 2.) The PSC Form names "Joko Holdings LLC" as

*id.* ¶¶ 20–21 (citing PSC Form 2)). Joko Holdings owns seventy-five percent or more of Yellow Brick UK's voting shares. (*See id.* ¶ 12). Joko Holdings is the required signatory for Yellow Brick UK's corporate governance resolutions. (*See id.* ¶ 22). Kol-Bar is the authorized signatory of Joko Holdings. (*See id.* ¶ 12).

With the Amended Complaint, Plaintiff shows Yellow Brick UK engaged in business in the United States at least twice prior to the creation of Yellow Brick US. (*See id.* ¶ 27). In 2015, Yellow Brick UK announced a merger with a Lancaster, Pennsylvania company, Aspire Ventures; and the same year, Yellow Brick UK advertised business dealings in San Francisco with a company called Smart Sparrow. (*See id.* (incorporating screen shots from Yellow Brick Capital Facebook page)).

***Yellow Brick US.*** In 2016, Yellow Brick UK hired Hammer as CEO of the Yellow Brick Group. (*See id.* ¶ 28).[7] Yellow Brick UK, "through Mr. Kol-Bar and Mr. Hammer" incorporated Yellow Brick US. (*Id.* ¶ 28). Kol-Bar is a director and shareholder of Yellow Brick US. (*See id.* ¶ 29). Hammer is a director and shareholder of Yellow Brick US. (*See id.* ¶ 32).

In 2016, Hammer opened an office in Aventura, Florida in Yellow Brick US's name; however, Yellow Brick UK advertised the office as its own on its website YBCAP.com. (*See id.* ¶ 28 (citing Ex. E, YBCAP.com Website [ECF No. 25-5] (listing the address for Yellow Brick UK's "USA Office" as 20807 Biscayne Boulevard, Suite 100, Aventura, FL 33180))). Yellow Brick UK pays the salaries and expenses of Yellow Brick US. (*See id.* ¶ 30). Yellow Brick UK is Hammer's sole "client" in the United States. (*Id.* ¶ 31). Hammer testified Yellow Brick US has

---

the "relevant legal entity hold[ing], directly or indirectly, 75% or more of the voting rights in [Yellow Brick UK]." (*Id.* (alterations added)).

[7] Defendants contest this fact. (*See* Kol-Bar Decl. ¶ 44). Kol-Bar explains "'Yellow Brick Group' has never existed as a corporate entity; rather, it is a name used as a branding strategy in connection with promotion [Yellow Brick UK] and other 'Yellow Brick' named corporate entities." (*Id.* (alteration added)).

other clients, but these are managed by Kol-Bar and Hammer is unsure what income, if any, Yellow Brick US receives from those clients. (*See id.* ¶ 30 (citing Ex. F, July 1, 2019 Andres Hammer Deposition ("Hammer Dep.") [ECF No. 25-6] 61:14–62:12)). Yellow Brick US is "directly funded" by Yellow Brick UK via invoices Hammer submits to Yellow Brick UK after Hammer completes Yellow Brick US assignments for Yellow Brick UK. (*Id.*).

The corporate formalities between the two entities are otherwise unclear or nonexistent. (*See id.* ¶ 31). The two share the same officers and directors. (*See id.* ¶ 32). There is no written partnership agreement between the two. (*See id.* ¶ 31 (citing Hammer Dep. 88:5–6)).[8] There is no written agreement formalizing a client relationship — only a "verbal consulting agreement." (*Id.* (quoting Hammer Dep. 81:6–7)). Yellow Brick US does not have its own website, and it is only referred to on Yellow Brick UK's website. (*See id.* ¶ 33). Yellow Brick US's information technology infrastructure is controlled by Yellow Brick UK, and Hammer's work email address shares the same URL as the emails for Yellow Brick UK. (*See id.* (citing Hammer Dep. 132:22–133:7)).

***Hammer's Work on Behalf of Yellow Brick UK.*** Hammer is listed on Yellow Brick UK's website and Facebook page as Yellow Brick UK's CEO. (*See* Am. Compl. ¶ 32). Hammer's LinkedIn page lists him as an employee of Yellow Brick UK.[9] (*See id.*). Hammer testified when Yellow Brick US needs to discuss something with Yellow Brick UK, the conversation is between

---

[8] Plaintiff's citation to this section of the Hammer Deposition appears to be a scrivener's error. Plaintiff cites to page 88:44; the correct citation is to page 88:5–6.

[9] Plaintiff supports the foregoing allegations with citations to (1) a screen shot from the Yellow Brick website ("Yellow Brick Homepage") [ECF No. 25-7] and (2) screen shots of Hammer's and Yellow Brick Capital's LinkedIn pages ("LinkedIn Pages") [ECF No. 25-8]. These exhibits show Hammer's affiliation with "Yellow Brick" or "Yellow Brick Capital" and *not* Yellow Brick UK, specifically. (*See* Yellow Brick Homepage 2; LinkedIn Pages 2, 6). In fact, the LinkedIn page for Yellow Brick Capital lists "Yellow Brick Capital (UK) Limited" as an *affiliated* company. (LinkedIn Pages 6).

him and Kol-Bar, similar to regular conversations the two have as partners of Yellow Brick US and as partners of Yellow Brick UK. (*See id.* ¶ 34).

From his base in Florida, Hammer participates in major business decisions regarding Yellow Brick UK, decisions that do not pertain to Yellow Brick US. (*See id.* ¶ 35). Plaintiff alleges Hammer's activities "reflect[] Yellow Brick UK uses Yellow Brick US's office space as its own and the daily operations of Yellow Brick UK and Yellow Brick US are not kept separate." (*Id.* ¶ 35 (alteration added)). For example, Mr. Hammer worked from his home base in Florida "as Andres Hammer, Partner" of Yellow Brick UK to decide whether Yellow Brick UK should adjust its licensing status with the United Kingdom's Financial Conduct Authority ("FCA"). (*Id.* ¶ 35 (citing Hammer Dep. 85:3–17; 108:20–109:10)).

Hammer is based in Miami, and Kol-Bar is based in London. (*See id.* ¶ 36). Hammer and Kol-Bar "work fluidly" between the offices under the name "The Yellow Brick Group." (*Id.*). For instance, Kol-Bar and Hammer travelled to Israel together on behalf of the Yellow Brick Group. (*See id.* ¶ 37). The pair also travelled to London together to inaugurate the ground floor of Yellow Brick UK's London hotel. (*See id.*).

***Yellow Brick UK's Relationship with Onix Capital and the Alleged Fraudulent Transfers***. In 2013, Yellow Brick UK transferred $5,000 to Highlander Real Estate Ventures, an entity owned by Chang. (*See id.* ¶ 23 (citing Ex. C, Highlander Bank Records [ECF No. 25-3])). Chang published marketing materials in connection with Highlander, stating Kol-Bar was a member of Onix Capital's "advisory board." (*Id.* ¶ 24 (internal quotation marks removed)). Around the time of the Highlander transaction, "Mr. Kol-Bar, Yellow Brick UK and Chang developed a close relationship." (*Id.* ¶ 25). Kol-Bar introduced Chang to people Chang would later hire as employees in London. (*See id.*). Yellow Brick UK permitted Chang to work from its

London office and have packages delivered there. (*See id.*). Chang also invited Kol-Bar to serve on the board of directors of Chang's UK company, Onix Capital Limited. (*See id.* ¶ 26).

On June 4, 2015, prior to the creation of Yellow Brick US, Onix Capital wired Yellow Brick UK $57,518.00 for "Consulting Fees." (*Id.* ¶ 38 (citing Ex. I, Bank Records [ECF No. 25-9]). On October 8, 2015, Onix Capital wired Yellow Brick UK $107,315.83 for "Advisory Services." (*Id.*). These transfers occurred at times when Onix Capital was insolvent. (*See id.* ¶ 44). At the time of the transfers, Yellow Brick UK had been owned and controlled by Florida-based Joko Holdings LLC for at least five years. (*See id.* ¶ 38). Yellow Brick UK had also been actively engaged in business with one of Chang's Miami-based companies for at least two years.[10] (*See id.*).

***Plaintiff's Attempt to Recover the Alleged Fraudulent Transfers.*** On January 8, 2019, Plaintiff subpoenaed the Yellow Brick Group at its Aventura office for documents relating to the wire transfers and the consulting services provided to Onix Capital. (*See id.* ¶ 39 (citing Ex. J, Subpoena [ECF No. 25-10])). Yellow Brick Group responded to the subpoena via a letter dated January 9, 2019, stating the only documents in its possession relating to Chang concerned Chang's rental of office space belonging to Yellow Brick UK in London. (*See id.* (citing Ex. K, Response to Subpoena [ECF No. 25-11] 4–5)).[11] The letter states "[Yellow Brick UK] did not have any other business or other activity with Alberto Chang and/or any of his companies, investments or anything related to them." (*Id.* ¶ 42 (quoting Response to Subpoena 5 (alteration

---

[10] The Amended Complaint states "*Yellow Brick* had been owned and controlled [by Joko Holdings] for at least five years[.]" (*Id.* (alterations and emphasis added)). Because this allegation concerns activity in 2015, prior to the creation of Yellow Brick US, the Court construes the allegation as pertaining to Yellow Brick UK. (*See id.*).

[11] The January 9, 2019 letter is attached to an email to Plaintiff's counsel dated January 31, 2019. The January 31, 2019 email and attached January 9, 2019 letter comprise Exhibit K.

added; internal quotation marks omitted))). Hammer testified he participated in drafting the letter. (*See id.* ¶ 40).

The January 9, 2019 letter's statements are inconsistent with the memo notes on the alleged fraudulent wire transfers indicating payments were made to Yellow Brick UK for "Consulting Fees" and "Advisory Services." (*Id.* ¶ 41 (internal quotation marks omitted)). The letter's statement Yellow Brick UK "did not have any other business or activity with Alberto Chang" is also inconsistent with the fact Yellow Brick previously transferred $5,000 to Chang's Highlander entity. (*Id.* ¶ 42 (quoting Response to Subpoena 5 (alteration added; internal quotation marks omitted))). Yellow Brick Group did not produce a lease agreement between any Yellow Brick entity and Onix Capital to substantiate the claim the wire transfers constituted lease payments. (*See id.* ¶ 43). Neither did Yellow Brick Group produce documents showing the wire transfers were for consulting or advisory services. (*See id.*).[12]

Yellow Brick Group did not return the funds. (*See id.* Am. Compl. ¶ 45). Instead, Yellow Brick UK asserts it has an agreement with Chang under which Chang still owes Yellow Brick UK $700,000.00. (*See id.* ¶ 59).

***Defendants' Efforts to Distinguish Yellow Brick UK from Yellow Brick US.*** Plaintiff alleges "the Yellow Brick Group has taken several proactive and improper steps to try and to distance itself from the Receiver's and this Court's jurisdiction." (*Id.* ¶ 45).

In correspondence with Plaintiff's counsel, Hammer "has repeatedly modified his email

---

[12] Defendants state Yellow Brick UK "produced a document to Plaintiff showing Alberto Chang requested that its rent payment to Yellow Brick UK be characterized as 'consulting or advisory services.'" (Kol-Bar Decl. ¶ 13, n. 2). Defendants attach an email from the Managing Director of Grupo Arcano to a Yellow Brick employee stating "Have asked Alberto about your payment, this was his reply: *I will pay this from Onix Capital LLC (USA) but I need a tax free invoice with a detail of expenses as in 'financial advice for CQCL investment' . . . once we get the invoice . . . we will process payment immediately.*" (*Id.*, Ex. 3 October 6, 2015 Email [ECF No. 35-5] 1 (alterations added; emphasis in original)).

signature to cover up the Yellow Brick Group and [Yellow Brick UK]'s contact with and business dealings in Florida." (*Id.* ¶ 47 (alteration added)). On January 31, 2019, Hammer emailed Plaintiff's counsel attaching the January 9, 2019 letter. (*See id.* (citing Response to Subpoena 2)). The email signature block identifies Hammer as "Group CEO" of "Yellow Brick Group" and lists an Aventura, Florida address. (*Id.* (internal quotation marks omitted)). The email contains subscript stating, "[Yellow Brick UK] is authorized and registered by the Financial Conduct Authority (FCA)." (*Id.*; Response to Subpoena 2 (alteration added)).

Plaintiff asked Hammer to accept service of the subpoena directed to him in his capacity as Group CEO of the Yellow Brick Group. (*See id.* ¶ 49). On March 4, 2019, Hammer replied via email stating he would accept service, but modified his email signature to state "CEO" of "Yellow Brick US" and not "Group CEO" of "Yellow Brick Group." (*Id.* (citing Ex. M, March 4, 2019 Email [ECF No. 25-13] 1])). The March 4, 2019 email contains the same subscript as the January 31, 2019 email concerning Yellow Brick UK. (*See id.*).

Plaintiff asked the Yellow Brick Group to enter into a tolling agreement when it appeared Hammer's deposition would be delayed. (*See id.* ¶ 50). Hammer replied to Plaintiff via email requesting the tolling agreement be addressed to Yellow Brick US only. Hammer further stated he has "no authority to sign on behalf of any entity besides [Yellow Brick US]." (*Id.* (quoting Ex. N, March 6, 2019 Email [ECF No. 25-14] 1] (alteration added))). Hammer again altered the signature block of the March 6, 2019 email. The March 6, 2019 email's signature block identifies Hammer as CEO of Yellow Brick US and removes the subscript pertaining to Yellow Brick UK present in his earlier emails. (*See id.*). Hammer's LinkedIn page, however, identifies him as an employee of

Yellow Brick Capital, based in the Miami/Ft. Lauderdale area.[13]

On May 8, 2019, Plaintiff served Andres Hammer "as CEO for [Yellow Brick UK]" at 20201 East Country Club Dr., Miami FL 33180.  (*See* Return of Service [ECF No. 6] (alteration added)).

Defendants now move to dismiss on two grounds: (1) Plaintiff fails to state a claim against Yellow Brick US under Rule 12(b)(6); and (2) Yellow Brick UK must be dismissed for lack of personal jurisdiction under Rule 12(b)(2).   (*See generally* Mot.).

## II.     LEGAL STANDARDS

### A.     Dismissal for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim against it by asserting the complaint fails state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).  Therefore a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556).  When reviewing a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

---

[13] The Amended Complaint alleges Hammer's LinkedIn profile "lists him as an employee of Yellow Brick UK, based in the Miami/Ft. Lauderdale area."  (*Id.* ¶ 52 (citing Ex. H, LinkedIn Page [ECF No. 25-8])). The LinkedIn page lists Hammer's employer as Yellow Brick Capital, not Yellow Brick UK. (*See id.*).

### B. Dismissal for Lack of Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim against it by asserting the defense of lack of personal jurisdiction. Because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons," *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)), a federal court sitting in Florida may properly exercise personal jurisdiction only if the requirements of (1) Florida's long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citing *Sculptchair, Inc. v. Century Arts Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)).

"A plaintiff seeking to obtain jurisdiction over a non-resident defendant initially need only allege sufficient facts to make out a prima face case of jurisdiction." *Id.* (citing *Electro Eng'g Prods. Co. v. Lewis*, 352 So. 2d 862, 864 (Fla. 1977)). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). If a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to make a prima facie showing of the inapplicability of the state's long-arm statute. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam) (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)).

If the defendant satisfies its burden, the burden then shifts to the plaintiff to "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Id.* "The district court must construe all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting

evidence." *Peruyero*, 83 F. Supp. 3d at 1287 (citing *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010)) (other citation omitted).

## III.    ANALYSIS

### A.    The Parties' Arguments

Regarding their Rule 12(b)(6) argument, Defendants contend Plaintiff fails to plausibly allege Yellow Brick US is Yellow Brick UK's alter ego and therefore no claim lies against Yellow Brick US for the alleged fraudulent transfers or unjust enrichment. (*See* Mot. 3–10). Regarding personal jurisdiction, Defendants argue because Yellow Brick US is not Yellow Brick UK's alter ego, Plaintiff cannot establish jurisdiction over Yellow Brick UK via its relationship with Yellow Brick US. (*See id.* 13–17). Defendants also argue Plaintiff fails to show Yellow Brick UK is subject to the Court's specific or general jurisdiction. (*See id.* 11–13).

According to Plaintiff, (1) the Complaint sufficiently alleges Yellow Brick US is Yellow Brick UK's alter ego (*see* Resp. 6–13); and (2) the Court has personal jurisdiction over Yellow Brick UK because (a) the Court has general jurisdiction over Yellow Brick UK's alter ego, Yellow Brick US, allowing the Court to impute jurisdiction to Yellow Brick UK (*see id.* 16); (b) Yellow Brick UK has "substantial contacts" with South Florida (*see id.* 13–19); (c) Yellow Brick UK was served in Florida (*see id.* 10–11); and (d) personal jurisdiction is otherwise authorized under 28 U.S.C. sections 754 and 1692 (*see id.* 19–20).

The Court addresses these arguments, as necessary, below.

### B.    Motion to Dismiss Under Rule 12(b)(6)

Those who seek to pierce the corporate veil in Florida carry a "very heavy burden." *Gov't of Aruba v. Sanchez*, 216 F. Supp. 2d 1320, 1362 (S.D. Fla. 2002) (citations omitted). At the motion to dismiss stage, a plaintiff need only allege facts which support a plausible basis for alter

ego as a theory of liability. *See Georgetown Trading Co., LLC v. Venturi Spirits, LLC*, No. 14-62277-CV, 2015 WL 11197790, at *2 (S.D. Fla. Mar. 16, 2015) (finding allegations the defendants directed and controlled the alleged alter ego, which were made only "on information and belief," were sufficient to survive a motion to dismiss).[14]  To do so, a plaintiff must allege:

(1)    the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the *shareholders* were in fact alter egos of the corporation;[15]

(2)    the corporate form must have been used fraudulently or for an improper purpose; and

(3)    the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (emphasis in original; quoting *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)).  Plaintiff has done so in the Amended Complaint.

---

[14] The court *Georgetown Trading Co.* distinguished the standard required when analyzing allegations of alter ego on a motion to dismiss for failure to state a claim from the higher, burden-shifting standard required on a motion to dismiss for lack of personal jurisdiction. *See id.* at *2 (distinguishing *It's a 10, Incorporated v. Beauty Elite Group Incorporated*, No. 13-60154-CIV, 2013 WL 1636366 (S.D. Fla. Apr. 16, 2013), and noting *It's a 10* "is distinguishable because the Court was addressing the issue of personal jurisdiction, and the defendant produced affidavits in contravention of the allegations.")

[15] State and federal courts in Florida vary in their use of terminology when reciting alter ego pleading requirements.  Some, like Plaintiff, state pleading alter ego requires a showing that a corporation is a "mere instrumentality" of its parent. *See, e.g.*, *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1140 (S.D. Fla. 2007) ("In order to properly allege the 'alter ego' theory, a plaintiff must allege [] that the resident corporation was a mere instrumentality of its shareholders . . . ." (alterations added; citation omitted)). Others use "mere instrumentality" as a synonym for "alter ego." *See Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1394 (S.D. Fla. 2014) ("For a subsidiary to be considered a mere instrumentality of a parent corporation, there must be . . . control of the parent over the subsidiary to the degree that it is a mere instrumentality" (alteration added; citation and internal quotation marks omitted)); *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 556 (Fla. 2d DCA 2017) ("To pierce the corporate veil the plaintiff must establish [] that the corporation is a mere instrumentality or alter ego of the defendant[.]" (alterations added; internal quotation marks and citation omitted)).  The Court views the first element of the alter ego test — dominance and control — as coextensive with the "mere instrumentality" requirement.

First, dominance and control. Plaintiff plausibly alleges Yellow Brick US was dominated and controlled to such an extent it existed as a "mere instrumentality" of Yellow Brick UK. In this regard, the Eleventh Circuit has enumerated a "laundry list of factors" to be used to determine the extent of control:

(1)     the parent and the subsidiary have common stock ownership;

(2)     the parent and the subsidiary have common directors or officers;

(3)     the parent and the subsidiary have common business departments;

(4)     the parent and the subsidiary file consolidated financial statements and tax returns;

(5)     the parent finances the subsidiary;

(6)     the parent caused the incorporation of the subsidiary;

(7)     the subsidiary operates with grossly inadequate capital;

(8)     the parent pays the salaries and other expenses of the subsidiary;

(9)     the subsidiary receives no business except that given to it by the parent;

(10)    the parent uses the subsidiary's property as its own;

(11)    the daily operations of the two corporations are not kept separate; and

(12)    the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.

*United Steelworkers of Am., AFL-CIO-CLC v. Connors Steel Co.*, 855 F.2d 1499, 1505 (11th Cir. 1988) (quoting *United States v. Jon-T Chem., Inc.*, 768 F.2d 686, 691–92 (5th Cir. 1985)). "It is not necessary that the party seeking to pierce the corporate veil [allege] all of the factors, but enough of the factors must exist to indicate the necessary degree of control by one company over the other to constitute an alter ego relationship." *Eitzen Chem. (Singapore) PTE, Ltd. v. Carib*

14

*Petroleum*, 749 F. App'x 765, 771 (11th Cir. 2018) (alteration added; citing *United Steelworkers*, 855 F.2d at 1506).

Plaintiff states facts satisfying most of the foregoing factors. Regarding factors one and two, Plaintiff alleges Yellow Brick US and Yellow Brick UK "have the exact same officers and directors" (Am. Compl. ¶ 28) — Hammer and Kol-Bar — and "have common stock ownership" (*id.* ¶ 32). Regarding factor three, Plaintiff alleges Yellow Brick UK and Yellow Brick US have the same informational technology infrastructure; Hammer's email address shares the same URL as the email addresses associated with Yellow Brick UK; and Yellow Brick US does not have a separate website, "instead [being] only referenced briefly on Yellow Brick UK's website." (*Id.* ¶ 33 (alteration added)).

Regarding factors five and eight, Plaintiff alleges "Yellow Brick UK pays the salaries and expenses of Yellow Brick US" (*id.* ¶ 30), and Yellow Brick UK "directly fund[s]" Yellow Brick US upon receiving invoices from Hammer (*id.* ¶ 31 (alteration added)). Regarding factor six, Plaintiff alleges "Yellow Brick UK . . . through Mr. Kol-Bar and Mr. Hammer, incorporated Yellow Brick US." (*Id.* ¶ 28 (alteration added)). Regarding factors seven and nine, Plaintiff alleges Hammer, the CEO of Yellow Brick US, works "solely with, for and at the behest of Yellow Brick UK" and points out Hammer is unaware "what income — if any — Yellow Brick US receives from [clients other than Yellow Brick UK]." (*Id.* ¶ 30 (alteration added)).

Regarding factor ten, Plaintiff alleges Yellow Brick UK uses and advertises Yellow Brick US's office as its own. (*See id.* ¶ 28). Regarding factor eleven, Plaintiff alleges Hammer and Kol-Bar "work fluidly between Yellow Brick's London and Miami offices" and operate under the name "The Yellow Brick Group," which does not distinguish between the two corporate entities. (*Id.* ¶ 35). Plaintiff also states, "Hammer acknowledged . . . [i]f Yellow Brick US needs to discuss

something with Yellow Brick UK . . . the conversation would be between [Hammer] and Mr. Kol-Bar, similar to the regular conversations they have together as partners of Yellow Brick US and Yellow Brick UK." (*Id.* ¶ 34 (alteration added)). And Plaintiff demonstrates how Hammer attempted to surreptitiously distinguish his work at Yellow Brick US from Yellow Brick UK by repeatedly changing his email signature block. (*See id.* ¶¶ 46–52 (citing exhibits)).

Finally, regarding factor twelve, Plaintiff alleges Yellow Brick US has no partnership agreement with Yellow Brick UK or any other, written, formalized relationship. (*See id.* ¶ 32). Plaintiff points out the only factor without factual support is factor four because Yellow Brick US filed its own tax return. (*See* Resp. 7).

Faced with this catalogue of allegations and supporting exhibits, Defendants' contention there are no facts available to support an alter ego theory of liability against Yellow Brick US is simply unavailing. And although Defendants contend Florida courts do not pierce the corporate veil "[a]bsent proof of intentionally fraudulent conduct," *Resolution Trust Corp., v. Latham & Watkins*, 909 F. Supp. 923, 931 (S.D.N.Y. 1995) (alteration added), Plaintiff need not *prove* alter ego at the pleading stage. Indeed, numerous courts in this District have allowed allegations of alter ego to proceed at the Rule 12(b)(6) stage with less support than Plaintiff has presented here. *See Eitzen Chem. (USA), LLC v. Carib Petroleum*, No. 10-23512, 2011 WL 13213315, at *2 (S.D. Fla. Mar. 22, 2011) (denying motion to dismiss where the plaintiff alleged individual defendant used his business entities to mislabel and ship TECSOL oil, even though alter ego allegations were "not as clear at the Court would prefer"); *Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1266 (S.D. Fla. 2011) (finding the counter-claimant pled necessary elements to pierce corporate veil where it alleged the parent-company "blurred the lines between [it and its subsidiary] such as by having [the parent] manage [the subsidiary] directly and by sharing a

principal place of business, and that [the parent] used [the subsidiary] for a fraudulent purpose" (alterations added)); *Canon Latin Am., Inc. v. Lantech (C.R.), S.A.*, No. 08-21518-CIV, 2009 WL 10664392, at *5 (S.D. Fla. Apr. 29, 2009) (denying motion to dismiss where the plaintiff alleged the individual defendant "dominated [the company] to the extent that the company was his alter ego and wrongfully used the corporate form to allow [the company] to evade its existing obligations to [plaintiff]" (alterations added)). *Compare with Lobegeiger v. Celebrity Cruises, Inc.*, 869 F. Supp. 2d 1350, 1355 (S.D. Fla. 2012) (reviewing *United Steelworkers* factors and granting summary judgment, noting "the factual record on this issue is so sparse that the Court can scarcely determine whether *any* of the twelve factors have been established." (emphasis in original; footnote call number omitted)). Considering the standard as applied in the foregoing cases, Plaintiff has plausibly alleged Yellow Brick UK dominated and controlled Yellow Brick US.

Second, improper purpose. Plaintiff alleges Onix Capital transferred $164,833.83 to Yellow Brick UK while Onix Capital was insolvent, in furtherance of Chang's fraudulent scheme. (*See* Am. Compl. ¶¶ 44, 54). Plaintiff also alleges Yellow Brick UK incorporated Yellow Brick US (*see id.* ¶ 28) and "since that time [] has funneled money to Yellow Brick US's American bank accounts that may have contained [the] fraudulently obtained funds" (*id.* ¶ 62 (alteration added)). Plaintiff concludes Yellow Brick UK and Yellow Brick US's "continued possession of and refusal to return these funds . . . has [sic] resulted in injury to the receivership estate" and the "injury is ongoing." (*Id.* (alteration added)). These allegations are sufficient to state an improper purpose. *See, e.g.*, *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984) (finding parent corporation engaged in improper conduct for purposes of alter ego liability by organizing and using a shell subsidiary corporation for the sole purpose of assigning a lease to avoid any liabilities for rent).

Defendants argue Yellow Brick US *cannot* have been created or used for a fraudulent purpose because it was created *after* Onix Capital's fraudulent transfers to Yellow Brick UK. (*See* Mot. 15–17; Reply 4). According to Defendants, "the timing simply does not add up." (Reply 4). The two cases Defendants cite in support of this point — *Kernel Records Oy v. Mosley*, No. 09-21597-Civ, 2010 WL 2812565, at *1 (S.D. Fla. July 5, 2010), and *Harbaugh v. Greslin*, 436 F. Supp. 2d 1315 (S.D. Fla. 2006), *aff'd*, 218 F. App'x 950 (11th Cir. 2007) — are inapposite. In *Kernel*, the court rejected the plaintiff's alter ego theory where the alleged alter ego was created "long *before*" the improper conduct, reasoning there was "no evidence that shows [the alleged alter ego] intended to infringe upon anyone's rights." 2010 WL 2812565 at *9 (alteration and emphasis added). Here, Plaintiff alleges Yellow Brick US was created after the fraudulent transfers and then "used . . . to prevent the Receiver from collecting her rightful debt." (Am. Compl. ¶ 62 (alteration added)).

In *Harbaugh*, a judgment-creditor alleged it would not have pursued a contract with a judgment-debtor had it known the judgment-debtor was undercapitalized and required financial assistance from the alleged alter ego. *See* 436 F. Supp. at 1321. The court rejected this contention, noting the judgment-creditor executed the contract prior to the date the alleged alter ego funded the judgment-debtor. *See id.* The court held the judgment-creditor could not have been misled by any abuse of the corporate form because the improper conduct had yet to occur when the judgment-creditor executed the contract. *See id.*

The facts in *Harbaugh* are completely distinguishable from those alleged here. Plaintiff is not alleging any of the Receivership Entities relied on false representations that Yellow Brick US was adequately capitalized. Instead, she alleges Yellow Brick UK created Yellow Brick US in

order to funnel the fraudulent transfers to it, thereby abusing Yellow Brick US's corporate form. (*See* Am. Compl. ¶¶ 44–62).

Defendants' timing argument has been raised and rejected before. *See Freestream Aircraft USA Ltd. v. Chowdry*, No. 16-CV-81232, 2018 WL 2451189, at *10 (S.D. Fla. May 31, 2018). In *Freestream*, the president and COO of the plaintiff-company arranged to transfer approximately 2.6 million dollars to the individual defendant's company, Atlas Aviation, understanding the individual defendant would subsequently transfer the money to various entities at the plaintiff's direction. *See id.* at *2. The individual defendant did not follow the COO's instructions. *See id.* Instead, he closed Atlas Aviation, opened a new company, Atlas Sales, and transferred most of the money to it. *See id.*

Almost three years later, the individual defendant formed yet another company, Atlas Luxury. *See id.* The plaintiff brought an action against all three companies, alleging Atlas Luxury was the alter ego of Atlas Sales, even though it could not identify any documents showing a direct transfer of funds from Atlas Sales to Atlas Luxury. *See id.* at *3. The defendants, like Defendants here, argued Atlas Luxury "could not have been used to cause [the plaintiff's] injuries" because Atlas Luxury "was not incorporated until almost three years after the transfers in question took place[.]" *Id.* at *9 (alterations added). The court disagreed, stating "[t]he fact that Atlas Luxury was created after the funds were received and spent does not determine the issue since [the plaintiff] is arguing a *continuing* injury and that [the individual defendant's] use of Atlas Luxury to avoid payment up until the present time is a proximate cause of [the p]laintiff's injury." *Id.* at *10 (alterations and emphasis added).

So too here, Plaintiff alleges "Yellow Brick UK and its alter ego, Yellow Brick US's continued possession of and refusal to return [the funds] . . . has [sic] resulted in injury to the

receivership estate . . . . This injury remains ongoing." (Am. Compl. ¶ 63 (alterations added)). In this respect, *Freestream* is on all fours. Plaintiff has sufficiently alleged Yellow Brick US was created and used for an improper purpose. Plaintiff's statement the "continued possession [of] and refusal to return [the funds] . . . has [sic] resulted in injury to the receivership estate" (*id.* (alterations added)) also suffices to satisfy element three of the alter ego test. Plaintiff's claims against Yellow Brick US may proceed.

### C. Jurisdiction over Yellow Brick UK

Defendants move to dismiss Yellow Brick UK under Rule 12(b)(2) for lack of personal jurisdiction. Because the Court finds Plaintiff satisfies her burden of establishing personal jurisdiction over Yellow Brick UK through her allegations of alter ego and accompanying factual support, it does not address the other grounds raised challenging personal jurisdiction.[16]

Generally, federal courts sitting in diversity must undertake a two-step analysis to determine personal jurisdiction. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The exercise of jurisdiction must (1) be appropriate under the state's long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See id.* (footnote call number and citations omitted). But, "[t]he alter ego theory of long-arm jurisdiction exists as a limited exception to the general, two-step process for establishing long-arm jurisdiction[.]" *Bellairs v. Mohrmann*, 716 So. 2d 320, 322 (Fla. 2d DCA 1998)

---

[16] For example, Plaintiff also contends Yellow Brick UK is subject to personal jurisdiction in Florida because it was served here. (*See* Resp. 13). So-called "tag jurisdiction" allows a court to exercise personal jurisdiction based solely on the defendant's physical presence in the forum. *See Burnham v. Superior Court of California, Cnty. of Marin*, 495 U.S. 604, 619 (1990). It is unclear, however, if this jurisdictional hook extends to foreign, corporate defendants. *See No. Ins. Co. of N.Y. v. Constr. Navale Bordeaux*, No. 11-60462-CV, 2011 WL 2682950, at *3 (S.D. Fla. July 11, 2011) (noting "[t]he Florida cases that support the notion that jurisdiction can be solely based upon physical presence [] involve individuals, not corporations." (alterations added; citation omitted)).

(alterations added; citation omitted); *see also Broward Marine, Inc. v. S/V Zeus*, No. 05-23105-Civ, 2010 WL 427496, at *6 (S.D. Fla. Feb. 1, 2010) (quoting *Bellairs*, 716 So. 2d at 322). "Under the alter ego theory, the complaint only must allege facts sufficient to pierce the corporate veil of the resident corporation." *Bellairs*, 716 So. 2d at 322 (citation omitted).

The Court has already found Plaintiff plausibly alleges Yellow Brick US is Yellow Brick UK's alter ego under the Rule 12(b)(6) standard. A motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction sets a higher hurdle.

> When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

*Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (internal citations omitted).

State courts in Florida require an evidentiary hearing when the parties' affidavits concerning jurisdiction conflict with one another. *See Bellairs*, 716 So. 2d at 323 (citing *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989)). In federal court, jurisdictional hearings are discretionary. *Doe v. Fry*, No. 6:10-cv-825-Orl-22DAB, 2011 WL 13298562, at *3 (M.D. Fla. May 12, 2011) ("When, as here, a district court does not conduct a discretionary evidentiary hearing on a Rule 12(b)(2) motion, the plaintiff must establish a prima facie case of personal jurisdiction by presenting enough evidence to withstand a motion for directed verdict." (quoting *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006); other citation omitted)). Thus, the Court reviews the evidence presented by Defendants to see if it controverts Plaintiff's allegations.

See *Madara*, 916 F.2d at 1514. If it does not, the Court must accept Plaintiff's allegations as true and construe conflicting facts in favor of Plaintiff.[17] *See id.*

Defendants cite to two exhibits in support of their argument Yellow Brick US is not Yellow Brick UK's alter ego.[18] (*See* Mot. 5–6; 14–17). Defendants also cite to Andres Hammer's partially redacted deposition testimony, originally filed by Plaintiff. (*See* Redacted Hammer Dep. [ECF No. 29]). The Court considers them to determine whether they contain facts controverting the Amended Complaint's allegations.

*Exhibit A*. Exhibit A [ECF No. 35-1] is a compilation of corporate records consisting of "bank statements showing Yellow Brick UK's payments for its invoices, the [Yellow Brick US]

---

[17] The Court's approach to determining jurisdiction is supported by *Kingston Square Tenants Association v. Tuskegee Gardens, Ltd.*, 792 F. Supp. 1566, 1580 (S.D. Fla. 1992). In *Kingston*, the plaintiffs — public housing tenants — brought numerous causes of action against the former owners and managing agents of their apartment. (*See generally id.*). Several individual defendants moved to dismiss for lack of personal jurisdiction. *See id.* at 1579–1580. The court reviewed the traditional basis for asserting jurisdiction over an out-of-state defendant, explaining there must be "a constitutionally sufficient relationship between the [d]efendant and the forum" and a basis for jurisdiction in the "long-arm statute in which the court sits." *Id.* at 1580 (alteration added; citations omitted).

Without further discussion of the long-arm statute, the court stated, "Plaintiffs' allegations are seemingly a hybrid of a [sic] 'alter ego-pierce the corporate veil' theory. . . . In other words, the [d]efendants were personally involved in the activities which gave rise to the [p]laintiffs' claims, but performed their actions through alter-ego sham corporations." *Id.* at 1581–82 (alterations added). The court then reviewed the defendants' affidavits in support of their motion to dismiss and found they "fail[ed] to controvert the larger scope of the Plaintiff's allegations[.]" *Id.* at 1581 (alterations added). The court concluded, "*[i]f the [p]laintiffs' assertions are true*, it cannot be said that the [d]efendants would not reasonably be expected to be haled into Florida court." *Id.* (emphasis and alterations added).

The Court employs a similar approach here. *See also APR Energy, LLC v. Pakistan Power Res., LLC*, No. 3:08-CV-961-J-25MCR, 2009 WL 10670782, at *12 (M.D. Fla. May 21, 2009) (comparing the plaintiff's evidence of alter ego against [the defendant's] affidavits, and concluding "the Court will [] accept [the p]laintiff's allegations as true because [the d]efendants' statements to the contrary are conclusory[,]" and "at this stage, [the p]laintiff has made a sufficient showing that [the d]efendants are the alter ego [] such that the Court has jurisdiction over them[.]" (alterations added)).

[18] Defendants' Exhibit C [ECF No. 35-9] is submitted in support of Defendants' contention Yellow Brick UK's majority shareholder – Joko Holdings, LLC – is not a Florida company, and that Plaintiff confuses Joko Holdings, LLC with a separate entity based in Florida named Joko, LLC. As noted *supra* 3, n.6, this evidence conflicts with that in Joko Holdings LLC's PSC Form, which shows a Florida address for Joko Holdings LLC. (*See* PSC Form).

invoices to Yellow Brick UK, [Yellow Brick US's] Florida office leases, [Yellow Brick US's] certificate of incorporation with the State of Delaware, and its 2016–2018 [tax] filings." (Mot. 4 (alterations added)). Defendants contend these records "confirm the corporate formalities between Yellow Brick US and [Yellow Brick UK]." (*Id.* 5 (alteration added)).

Plaintiff does not contest the facts set forth in these corporate records. Plaintiff recognizes Yellow Brick UK is a client of Yellow Brick US (*see* Am. Compl. ¶¶ 13, 30); the Yellow Brick office in Florida was opened in Yellow Brick US's name (*see id.* ¶ 28); Yellow Brick US was incorporated in Delaware (*see id.* ¶ 13); and Yellow Brick US filed its own tax return (*see* Resp. 7). These facts are not the basis of Plaintiff's alter ego allegations. Instead, Plaintiff alleges — and Exhibit A does *not* controvert — that Yellow Brick UK was Hammer's *sole* client (*see* Am. Compl. ¶ 30) and *even though* the Florida office was opened in Yellow Brick US's name, Yellow Brick UK "advertised the [Florida] office as its own" (*id.* ¶ 28 (alteration added)). Thus, Exhibit A does not rebut Plaintiff's allegations.

***Exhibit B***. Exhibit B is the Kol-Bar Declaration. It is accompanied by six exhibits of its own. The Court addresses the portions of Defendants' Motion citing to the Kol-Bar Declaration that conflict with Plaintiff's alter ego allegations and then reviews Plaintiff's allegations and evidence against the Kol-Bar Declaration and its supporting exhibits. As noted, "[a]ll reasonable inferences . . . are construed in favor of the plaintiff." *Vohra Health Servs., P.A. v. Kane*, No. 10-21941-CIV, 2010 WL 11597976, at *3 (S.D. Fla. Oct. 25, 2010) (alterations added; citation omitted).

In response to Plaintiff's alter ego allegations, Defendants contend the following:

1.     Yellow Brick UK is a private limited company incorporated and with a principal place of business in London, England.

2.     Yellow Brick UK is an investment firm but does not invest in the United States.

3.      Yellow Brick UK is not engaged in a joint venture with Yellow Brick US.

4.      Yellow Brick US was incorporated in Delaware in 2016, and its business involves providing due diligence services for investments worldwide in health, energy, education and food.

5.      Yellow Brick UK has never provided any assets, capitalization, financing, or funding to Yellow Brick US, and Yellow Brick UK does not have an ownership interest in Yellow Brick US.

6.      Yellow Brick UK and Yellow Brick US are distinct entities that maintain separate offices, separate bank accounts and records; and they file separate tax returns.

7.      Yellow Brick UK has never paid the financial obligations or expenses of Yellow Brick US; the companies maintain separate accounting systems and have never commingled funds.

8.      Yellow Brick UK does not supervise the day-to-day operations of Yellow Brick US.

9.      Yellow Brick UK does not negotiate or approve any contracts entered by Yellow Brick US.

10.     Yellow Brick UK negotiates with Yellow Brick US on pricing for Yellow Brick US's services, and Yellow Brick UK has rejected Yellow Brick US's price proposals.

11.     Yellow Brick US invoices Yellow Brick UK for its services, and Yellow Brick UK pays Yellow Brick US with funds from its UK bank account, which are wired to Yellow Brick US's U.S. bank account.

12.     Yellow Brick US signed leases for its office space in its own name, and Yellow Brick UK did not guarantee these leases.

13.     Yellow Brick US is profitable and adequately capitalized, and it does not seek Yellow Brick UK's permission or approval before making expenditures.

14.     Yellow Brick US was not incorporated until almost one year after the subject transfers, and Yellow Brick UK never transferred the rent payments to Yellow Brick US.

(*See* Mot. 14–15 (citing Kol- Bar Decl. ¶¶ 2, 3, 23–33, 36, 41–42; other citations omitted)).

As with the evidence in Exhibit A, statements one, four, and eleven, twelve and parts of statement six of the Kol- Bar Declaration are uncontested. Plaintiff recognizes that Yellow Brick UK is a United Kingdom company, and Yellow Brick US was incorporated in Delaware. (*See* Am. Compl. ¶¶ 13, 20). Plaintiff also recognizes Yellow Brick US invoices Yellow Brick UK. (*See id.* ¶ 31). In fact, this is the basis of Plaintiff's allegation Yellow Brick UK funds Yellow Brick US. (*See id.* (stating "Mr. Hammer dons his Yellow Brick US 'hat' and drafts an invoice to Yellow Brick UK which then wires him money, thus yellow Brick US is directly funded by Yellow Brick UK.") (citing Hammer Dep. 52:11–55:19; 61:14–62:12)).

Plaintiff concedes Yellow Brick US has a separate U.S. bank account (*see* Am. Compl. ¶ 61) and filed its own taxes (*see* Resp. 7). And Plaintiff concedes the Aventura office was opened in Yellow Brick US's name (*see* Am. Compl. ¶ 28), but alleges, with supporting evidence, "Yellow Brick UK advertised this office as its own" (*id.*).

Turning to the contested allegations, in statement two, Defendants contend Yellow Brick UK does not invest in the United States. (*See* Mot. 14 (citing Kol-Bar Decl. ¶ 3)). This statement does not impact the alter ego analysis, as Plaintiff alleges Yellow Brick UK invests in the United States *through* its alter ego, Yellow Bruck US. In any event, this statement is without evidentiary support beyond the statement in the Declaration, which conflicts with Plaintiff's evidence Yellow Brick UK engaged in business with U.S.-based corporations in 2015, prior to the creation of Yellow Brick UK. (*See* Am. Compl. ¶ 27; Resp. 8–9).

In statement three, Defendants contend Yellow Brick UK is not engaged in a joint venture with Yellow Brick US. (*See* Mot. 14 (citing Kol-Bar Decl. ¶ 36)). This statement also lacks evidentiary support beyond the assertion in the Declaration. Moreover, Plaintiff does not contend

Yellow Brick US and Yellow Brick UK are engaged in a joint venture, but that Yellow Brick US is the instrumentality of Yellow Brick UK.

Statement five — that Yellow Brick UK does not have an ownership interest in Yellow Brick US and Yellow Brick UK has never provided capitalization, financing, or funding to Yellow Brick US — also lacks evidentiary support beyond the assertions in the Declaration. (*See* Mot. 14 (citing Kol-Bar Decl. ¶¶ 23–24)). The same observation applies to statement seven — Yellow Brick UK has never paid the financial obligations or expenses of Yellow Brick US, and the companies maintain separate accounting systems and have never commingled funds. (*See id.* (citing Kol-Bar Decl. ¶¶ 29, 31)). In contrast, Plaintiff alleges Yellow Brick UK funds Yellow Brick US by paying invoices prepared by Hammer, and Plaintiff cites to testimony supporting the same. (*See* Am. Compl. ¶ 31 (Hammer Dep. 52:11–55:19; 61:14–62:12)).

The portion of statement six that asserts Yellow Brick UK and Yellow Brick US maintain separate offices must also be construed in Plaintiff's favor. (*See* Mot. 17 (citing Kol-Bar Decl. ¶ 7)). The Declaration states "Yellow Brick UK . . . has never had an office . . . in Florida" (Kol-Bar Decl. ¶ 7 (alteration added)), and in a footnote explains the website submitted by Plaintiff showing Yellow Brick UK's advertisement of an office in Florida "was an error and is not accurate" (*id.* ¶ 7, n.1). As between this statement and Plaintiff's screen shot of the YBCAP.com website, which clearly states "USA Office: 20807 Biscayne Boulevard, Suite 100, Aventura, Florida 33180" the Court must infer in favor of Plaintiff. (YBCAP.com Website 1, 17).

Neither do Defendants present evidentiary support beyond the statement in the Declaration for statement eight — that Yellow Brick UK does not supervise the day-to-day operations of Yellow Brick US — or statement nine — that Yellow Brick UK does not negotiate or approve contracts for Yellow Brick US. For her part, Plaintiff alleges Hammer, CEO of Yellow Brick US,

works at the behest of his one client — Yellow Brick UK. (*See* Am. Compl. ¶ 30). This allegation is supported by Hammer's testimony. (*See id.* (citing Hammer Dep. 55:4–25; 61:14–62:12)). As between the testimony and Defendants' declaration, the evidence is construed in favor of Plaintiff.

The Court also construes the contested portion of statement fourteen — that Yellow Brick UK never transferred the rent payment to Yellow Brick US (*see* Mot. 14 (citing Kol-Bar Decl. ¶¶ 26–27)), in favor of Plaintiff. Plaintiff's allegation Yellow Brick UK "funneled money" to Yellow Brick US after Yellow Brick US's incorporation is not supported by direct evidence or testimony (*see* Am. Compl. ¶ 62), but Plaintiff also alleges Yellow Brick UK funds Yellow Brick US through payments of invoices drafted by Hammer, and points to testimony supporting the same. (*See* Am. Compl. ¶ 31 (Hammer Dep. 52:11–55:19; 61:14–62:12)). For their part, Defendants submit Yellow Brick UK's HSBC Records (*see* Kol-Bar Decl. ¶¶ 26–27 (citing Ex. B-6 HSBC Bank Statement [ECF No. 35-8] 1, 6), but these records show nothing more than the transfers from Onix Capital to Yellow Brick UK in the first instance (*see id.*). This evidence does not rebut Plaintiff's allegation money was transferred *out* of Yellow Brick UK to Yellow Brick US via payments for invoices submitted by Yellow Brick US.

In contrast, the remaining portion of statement six — that Yellow Brick UK and Yellow Brick US "maintain[] separate books, records and financial statements for accounting purposes" (Mot. 4 (citing Kol-Bar Decl. ¶¶ 41–42 (alteration added)) — must be construed in favor of Defendants. Although Plaintiff argues "Yellow Brick US does not. . . keep[] separate books and records" (Resp. 9 (alteration added)), this argument is not supported by exhibits or testimony. In fact, the Amended Complaint contains no allegations regarding the separation, or lack thereof, of books and records in the first instance.

**Hammer Deposition**. The tenth and thirteenth statements cite to Andres Hammer's deposition testimony. The Court construes both in favor of Defendants because they rebut Plaintiff's allegations, which are unaccompanied by factual support. In statement ten, Defendants contend Yellow Brick UK negotiates with Yellow Brick US on pricing for Yellow Brick US's services, and Yellow Brick UK has rejected Yellow Brick US's price proposals. (*See* Mot. 14 (citing Redacted Hammer Dep. [ECF No. 29] 64–66)). Plaintiff does not respond to this evidence. Neither does Plaintiff respond to statement thirteen — that Yellow Brick US is profitable and adequately capitalized, and it does not seek Yellow Brick UK's permission or approval before making expenditures. While Plaintiff points to testimony that Yellow Brick UK is Hammer's only client (*see* Am. Compl. ¶ 30 (citing Hammer Dep. 59:4–25; 61:14–62:12), Plaintiff does not submit evidence that Yellow Brick US is undercapitalized. And although Plaintiff alleges Yellow Brick UK works "at the behest" of Yellow Brick UK (*id.*), Plaintiff submits no evidence Yellow Brick UK dictates Yellow Brick US's expenditures.

*     *     *     *     *

In sum, Defendants partially rebut Plaintiff's allegations and supporting evidence of alter ego. At this stage, Defendants' evidentiary submissions are insufficient to deprive the Court of jurisdiction. *See Kingston Square Tenants Ass'n*, 792 F. Supp. at 1580; *APR Energy, LLC*, 2009 WL 10670782, at *12 (denying Rule 12(b)(2) motion and noting, "at this stage, [p]laintiff has made a sufficient showing that [the d]efendants are the alter ego of [the co-defendant] such that the Court has jurisdiction over them to the same extent it does over [the co-defendant]" (alterations added)); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, No. 09-CV-61436, 2010 WL 1531489, at *12 (S.D. Fla. Apr. 16, 2010) ("Although the Court acknowledges that [the p]laintiff must satisfy a heavy burden to successfully pierce the corporate veil, the Court finds that [p]laintiff's

allegations of alter ego are sufficient to survive a [Rule 12(b)(2)] motion to dismiss." (alterations added)).  The Court notes its conclusion extends to jurisdiction only, and it is not a determination Plaintiff may pierce the corporate veil.  Whether Plaintiff may do so is an issue for another day. *See Tara Prods*, 2010 WL 1531489, at *13 ("If [the d]efendant [] obtains summary judgment on either the alter ego theory or the conspiracy claim, he may again raise the argument that this Court[] lacks personal jurisdiction." (alterations added)).

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants, Yellow Brick Capital Advisers (UK) Limited and Yellow Brick Innovations (US) LLC's Motion to Dismiss First Amended Complaint **[ECF No. 35]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 12th day of November, 2019.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record